IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA RECEIVED
SOUTHERN DIVISION

2007 AUG 14  A 10: 50

ROBERT KENNEDY, II and
STEPHANIE KENNEDY,                    *
                                                        DEBRA P. HACKETT, CLK
                                                        U.S. DISTRICT COURT
         Plaintiffs,                  *                 MIDDLE DISTRICT ALA

vs.                                   *      CASE NO.: CV-2007-_____

                                                   1:07 cv728 - MEF
FLEETWOOD ENTERPRISES, INC.,          *
FLEETWOOD HOMES OF GEORGIA,
INC.,                                 *

         Defendants.                  *

## NOTICE OF REMOVAL

         COME NOW the Defendants, Fleetwood Enterprises, Inc. and Fleetwood Homes of

Georgia, Inc., and file this Notice of Removal of this case pending in the Circuit Court of Henry

County, Alabama, CV-2007-900049 to the United States District Court, Middle District of

Alabama, Southern Division, pursuant to 28 U.S.C. §§1332 and 1441(a), and in support thereof,

respectfully show unto this Court as follows:

         1.      An action was commenced against the Defendants in the Circuit Court of Henry

County, Alabama, entitled *ROBERT KENNEDY, II and STEPHANIE KENNEDY vs.*

*FLEETWOOD ENTERPRISES, INC., FLEETWOOD HOMES OF GEORGIA, INC.,* Case

Number CV-2007-900049.  The case involves alleged defects in a manufactured home.

Plaintiffs effected service of the Complaint by certified mail upon the agent for service of

process of Fleetwood Homes of Georgia, Inc. on July 18, 2007.  Said service was effected

subsequently in the same method on Fleetwood Enterprises, Inc. on July 19, 2007.  Less than

SCANNED

thirty (30) days have expired since service of summons upon these Defendants. The proof of service on both Defendants is attached as Exhibit "A."

2.      These Defendants have filed no pleadings, motions, or appearances in state court. These Defendants concur in the filing of this notice of removal. The documents attached hereto as Exhibit "B" constitute all of the process, pleadings and orders served upon defendants in this action.

3.      This action is one in which the United States District Courts are given original jurisdiction under 28 U.S.C. §1332 and which is removable under 28 U.S.C. §1441(a). Pursuant to 28 U.S.C. §1446(b), this notice is filed in the United States District Court for the Middle District of Alabama, Southern Division within the time allowed by law for the removal of civil actions to the United States District Court for the district and division of the place where the action is pending.

4.      There is diversity of citizenship between the plaintiffs and the defendants. Upon information and belief, the Plaintiffs are resident citizens of Henry County, Alabama, within the Middle District of Alabama. *See* paragraph 1 of the Complaint.

5.      Defendant Fleetwood Enterprises, Inc. is now and was at the time of filing the Complaint and at all intervening times a citizen of the state of California, its principal place of business, and a citizen of the state of Delaware, its place of incorporation. The statement of citizenship of this corporate defendant is contained in Exhibit "C", Affidavit of Todd Uhlick.

6.      Defendant Fleetwood Homes of Georgia, Inc. is now and was at the time of filing the Complaint and at all intervening times a citizen of the state of Georgia, which is its principal place of business and its place of incorporation. The statement of citizenship of this corporate defendant is contained in Exhibit "C", Affidavit of Todd Uhlick.

2

7.    The amount in controversy exceeds $75,000.  In their complaint, the Plaintiffs seek declaratory relief from the court, but no money damages.  The Plaintiffs contend that their arbitration agreement with the Defendants does not specify a method for appointing an arbitrator, and, therefore, the Plaintiffs request the court to appoint an arbitrator (and also to designate "the applicable rules and fees associated with the arbitration").

8.    When a plaintiff seeks injunctive or declaratory relief, "the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003).  In this case, the "object of the litigation" is the underlying arbitration complaint for monetary damages against the Defendants, attached as Exhibit B to the Plaintiff's complaint for declaratory relief (which is attached as Exhibit B to this Notice of Removal).

9.    The United States Fifth Circuit Court of Appeals allowed removal in a similar case.  In *Webb v. Investacorp*, 89 F.3d 252 (5th Cir. 1996), the plaintiffs filed a declaratory judgment action asking a court to determine that a contract did not require the plaintiffs' dispute to go to arbitration.  The defendant removed the case to federal court.  The plaintiffs argued that the case was about their right to have their dispute adjudicated in a court rather than in arbitration, and that right cannot be valued in monetary terms and has "no ascertainable value." The Fifth Circuit disagreed, looking to cases involving demands to compel arbitration or to enjoin arbitration and finding such cases sufficiently analogous.  The Fifth Circuit held that the amount in controversy was the potential award in the underlying arbitration proceeding. *See also America's Money Line, Inc. v. Coleman*, 360 F.3d 782, 786 (7th Cir. 2004) ("In the context of actions to compel arbitration, we have adhered to the rule that, in order to ascertain whether the jurisdictional amount for the diversity statute has been met, the appropriate focus is the stakes of

3

the underlying arbitration dispute"); *Jeffrey Press, Inc. v. Hartford Casualty Inc. Co.*, 326 F.

Supp. 2d 626 (E.D. Pa. 2004) (for declaratory judgment actions, the amount in controversy is

measured by looking at the complaint in the underlying suit or arbitration; it is irrelevant that the

equitable relief sought in the declaratory judgment action does not directly involve money

damages).

10.    In the present action, the Plaintiffs request the court to appoint an arbitrator. This

is similar to a demand to compel arbitration, or, as in *Webb*, a demand for declaratory relief as to

the parameters of an arbitration provision in a contract. The Plaintiff here not only request the

appointment of an arbitrator, but also request the court to designate the applicable rules and fees

associated with the arbitration. As stated by several courts, the Plaintiff's complaint for

declaratory relief here "'is only the initial step in a litigation which seeks as its goal a judgment

affirming the [arbitration] award.'" *America's Money Line*, 360 F.3d at 787 (quoting *Doctor's

Assocs., Inc. v. Hamilton*, 150 F.3d 157 (2d Cir. 1988)). Consequently, the amount in

controversy is the potential award in the arbitration proceeding.

11.    The Plaintiffs contend that they paid *$50,000* for their manufactured home, and

that the home *"is rendered worthless"* by the alleged defects (*see* paras. 15 and 13, respectively,

of the arbitration complaint). The Plaintiffs also seek rescission of the contract to purchase their

home. *See* Exhibit D (the first two pages of the arbitration demand, which were omitted from the

arbitration demand attached to Plaintiff's complaint for declaratory relief). Nevertheless, the

Plaintiffs do not specify a monetary demand in their *ad damnum* clauses. In such cases, a federal

district court still may exercise jurisdiction when the amount in controversy more likely than not

exceeds the $75,000.00 jurisdictional requirement, exclusive of interests and costs. <u>Tapscott v.</u>

MS Dealer Service Corp., 77 F.3d 1353 (11th Cir. 1996); Williams v. Best Buy Company, Inc., 269 F.3d 1316, 1319 (11th Cir. 2001).

12.    In diversity cases, state law covers substantive issues. See Caster v. Hennessey, 781 F.2d 1569 (11th Cir. 1986). Plaintiff's Complaint alleges causes of action against the Defendant for (1) a defective product pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 et seq., (2) breach of express warranty, (3) breach of implied warranty of merchantability, (4) breach of fitness for a particular purpose, (5) breach of warranty of habitability, (6) negligence, (7) wantonness, (8) unjust enrichment, (9) fraudulent concealment, and (10) and violation of the Alabama Extended Manufacturers Liability Doctrine. The *ad damnum* clauses following Counts Seven, Nine, Ten, and Eleven request judgment "in such amount of compensatory damages as deemed appropriate, a separate amount as punitive damages, and their costs, as well as reasonable attorney fees." The *ad damnum* clauses following Counts One through Six request compensatory damages, costs, and reasonable fees. Count Eight also demands pre-judgment interest dating back to the purchase of the plaintiffs' manufactured home in September 2004 *in the amount of $50,000.*[1]

13.    Faced with similar *ad damnum* language in other cases where no specific monetary demand is made, federal courts in Alabama have routinely taken judicial notice of the large punitive damages verdicts in Alabama and sustained removal over a plaintiff's argument that the amount in controversy is insufficient. See, e.g., Bolling v. Union Nat'l Life Ins. Co., 900 F.Supp 400, 405 (M.D.Ala. 1995); Steele v. Underwriters Adjusting Co., 649 F.Supp. 1414 (M.D.Ala. 1986). Juries in Alabama regularly award damages in excess of $75,000.00 in cases

---

[1]    Although Defendants here deny the Plaintiffs are entitled to pre-judgment interest, the Plaintiffs likely are claiming pre-judgment interest under section 8-8-1 of the *Alabama Code*, which provides interest at the rate of six percent. Interest at that rate calculated on the $50,000 purchase price over the thirty-five months since the Plaintiffs purchased their home equals $8,750. Accordingly, the minimum out-of-pocket claim by the Plaintiffs – excluding compensatory damages for mental anguish and punitive damages – is $58,750.

alleging manufactured home defects. For example, in Southern Energy Homes, Inc. v. Washington, 774 So.2d 505 (Ala. 2000), the jury awarded $375,000.00 in compensatory damages, and in Horton Homes, Inc. v. Brooks, 832 So.2d 44 (Ala. 2001), the jury awarded $150,000.00 in compensatory damages.

14.     Plaintiffs also have alleged "mental anguish and emotional distress, anxiety, embarrassment, anger, fear, frustration, disappointment, worry, annoyance, inconvenience" as a result of the alleged breach of warranty.  (Complaint paragraph 30).  Recent jury verdicts in Alabama reflect the potential magnitude of compensatory damages claims for mental and emotional distress arising from allegations of breach of warranty.  Verdicts well in excess of $75,000 have been rendered against corporate defendants, particularly out-of-state corporations, in such breach of warranty actions.  See e.g., Horton Homes, Inc. v. Brooks, 832 So. 2d 44 (Ala. 2001) (where plaintiff alleged breach of express warranty, breach of implied warranty, violation of the Magnuson Moss Warranty Act, negligent construction, wanton construction, negligent repair, wanton repair, fraudulent concealment, misrepresentation, misleading warranty under Magnuson-Moss Warranty Act, breach of warranty, and violation of the Magnuson-Moss Warranty Act, and that purchaser had approximately $12,000 in actual economic loss, plaintiff was awarded $150,000 in compensatory damages and punitive-damages award of $150,000 -- after a remittitur of $450,000); Southern Energy Homes, Inc. v. Washington, 774 So.2d 505 (Ala. 2000) (on claims of breach of implied and express warranty, damage award of $375,000.00, a substantial portion of which was for mental anguish damages, was affirmed by Supreme Court of Alabama).

15.     This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 since the parties are diverse and the amount in controversy exceeds $75,000.00.  Defendants maintain complete

6

diversity of citizenship with the Plaintiff upon information and belief and according to its statement of citizenship provided in Exhibit "C" hereto. The amount in controversy requirement also is met, as described in the preceding paragraphs. Accordingly, diversity jurisdiction exists.

16.    In addition to diversity jurisdiction, this Court also has federal question jurisdiction pursuant to 28 U.S.C. §1331. The claim for relief under the Magnuson Moss Warranty Act (the "Act") constitutes an action arising under the laws of the United States, 42 U.S.C. §2301 *et seq.* Furthermore, the amount in controversy is not less than $50,000, exclusive of interest and costs, when computed on the basis of all claims to be determined in this suit, pursuant to 42 U.S.C. §2310(d)(1), (d)(3)(B).

17.    Removal of the other non-warranty Counts, in addition to the Magnuson Moss Court, is appropriate under section 1441(c), which states:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or in its discretion, may remand all matters in which State law predominates.

28 U.S.C.A. § 1441(c) (West 2005)

18.    The present action contains claims separate and independent from the consumer warranty claim asserted under the Act, 42 U.S.C. §2301 *et seq.* Specifically, there are counts for tort claims in negligence, wantonness, an unjust enrichment claim, and the hybrid statutory claim under the Alabama Extended Manufacturers Liability Doctrine. These claims are separate and independent of the federal and state breach of warranty claims stated in Counts One through

7

Five. Hence, removal is proper under Section 1441(c).[2] In Re City of Mobile, 75 F.3d 605 (11th Cir. 1996).

19.    A true copy of this Notice of Removal is filed with the Clerk of the Circuit Court of Henry County, Alabama, as required by 28 U.S.C. § 1446(d).

WHEREFORE, Defendants pray that this Honorable Court accept jurisdiction of the above action.

JAMES H. CROSBY (CROSJ7501)
DAVID F. WALKER (WAL2617)
Attorneys for Defendants
Fleetwood Enterprises, Inc.
Fleetwood Homes of Georgia, Inc.

OF COUNSEL:
Crosby Saad, LLC
6404 Hillcrest Park Court
Mobile, Alabama 36695
Telephone: 251/476-3000
Facsimile: 251/776-5750
E-mail: jimcrosby@crosbysaad.com
        dwalker@crosbysaad.com

---

[2]    As discussed above, all of these claims are independently removable due to diversity jurisdiction. Federal question jurisdiction and supplemental jurisdiction are only *additional* bases for removal.

8

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 13th day of August 2007, served a copy of the foregoing upon counsel of record in this proceeding by placing the same in the United States Mail, properly addressed and first-class postage prepaid:

> C. Lance Gould
> Beasley, Allen, Crow,
> Methvin, Portis & Miles, P.C.
> Post Office Box 4160
> Montgomery, Alabama 36103
> **ATTORNEY FOR PLAINTIFF**

DAVID F. WALKER

**EXHIBIT A**



ELECTRONICALLY FILED
7/12/2007 1:33 PM
CV-2007-900049.00
CIRCUIT COURT OF
HENRY COUNTY, ALABAMA
SHIRLENE B. VICKERS, CLERK

## IN THE CIRCUIT COURT OF HENRY COUNTY, ALABAMA

| | |
|---|---|
| ROBERT KENNEDY, II and<br>STEPHANIE KENNEDY,<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>FLEETWOOD ENTERPRISES, INC.;<br>FLEETWOOD HOMES OF GEORGIA, INC.,<br><br>    **Defendants.** | )<br>)<br>)<br>)<br>)  **Civil Action No.:**_____<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

COME NOW Plaintiffs Robert Kennedy, II and Stephanie Kennedy, making a special appearance subject to and without waiving all objections as to personal jurisdiction, and by and through their undersigned counsel bring the following complaint for declaratory relief against the above-named Defendants:

### Parties

1. Plaintiffs Robert and Stephanie Kennedy are over the age of nineteen (19) and are residents of Henry County, Alabama.

2. Defendant Fleetwood Enterprises, Inc. (Fleetwood Enterprises) upon information and belief is a California corporation, who does business by agent in Henry County, Alabama.

3. Defendant Fleetwood Homes of Georgia, Inc. (Fleetwood Homes) upon information and belief is a Georgia corporation, who does business by agent in Henry County, Alabama.

### Jurisdiction and Venue

4. This action is brought pursuant to Alabama's Declaratory Judgment Act, codified at sections 6-6-220 through -232 of the Alabama Code, and Rule 57 of the Alabama Rules of Civil Procedure. Plaintiffs request the Court to declare the parties' rights and obligations with respect

to the contract attached to this Complaint as Exhibit A. Plaintiffs are faced with uncertainty as to their rights and obligations of the contract on which the Plaintiffs are attempting to submit for arbitration.

5. Pursuant to section 6-3-7(a) of the Alabama Code, venue is proper in Henry County because it is the county in which the Plaintiffs resided at the time of the accrual of the cause of action.

**Facts**

6. The subject matter of this action relates to the above-referenced arbitration agreement which is subject to the Federal Arbitration Act (FAA), being 9 U.S.C.A. § 1 et seq. and, specifically, 9 U.S.C.A. § 5, appointment of arbitrators.

7. No method is stated in the arbitration agreement for the appointment of an arbitrator.

8. On or about July 19, 2006, Plaintiffs submitted the controversy between the parties to the American Arbitration Association (AAA). Plaintiffs' complaint is attached as Exhibit B.

9. Defendants objected to the AAA's jurisdiction over the dispute on the grounds that the parties never agreed their arbitration would be handled through the AAA. Defendants' letter objecting to the AAA's jurisdiction is attached as Exhibit C.

10. On April 10, 2007, this matter was withdrawn without prejudice based on Defendants' representations that the arbitration provision did not invoke the jurisdiction of the AAA and that Defendants would not submit to the AAA's jurisdiction.

**Declaratory Relief**

11. Plaintiffs incorporate the allegations of paragraphs 1-10.

12. The FAA applies to transactions "(1) that use the channels of interstate commerce, (2) that involve the instrumentalities of interstate commerce, or persons or things in interstate

2

commerce, or (3) that involve general activities having a substantial effect on interstate commerce." McKay Bldg. Co., Inc. v. Juliano, 949 So.2d 882, 885 (Ala. 2006). Conducting business outside of Alabama or dealing in interstate commerce on a regular basis is sufficient evidence to demonstrate that the transaction involves interstate commerce. Id. Defendant Fleetwood Enterprises is a California corporation and Defendant Fleetwood Homes is a Georgia corporation. The FAA is applicable to this dispute since Defendants conduct business outside of Alabama on a regular basis.

13. The FAA provides in pertinent part:

> [I]f no method [of appointing an arbitrator] be provided therein,...upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators...who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

Ex parte Warren, 718 So.2d 45, 48 (Ala. 1998), quoting 9 U.S.C. § 5. There was no method of appointing an arbitrator or arbitrators provided in the arbitration agreement and the agreement does not provide the number of arbitrators that shall perform the arbitration. Therefore, this Court should appoint a single arbitrator to act under the agreement as if he had been named by the agreement.

14. It is "the court's duty to select an arbitrator in the absence of valid direction in the arbitration agreement." BankAmerica Housing Services, Div. of Bank of America, FSB v. Lee, 833 So.2d 609, 619 (Ala. 2002); See also South Ala. Pigs, LLC v. Farmer Feeders, Inc., 305 F.Supp.2d 1252, 1261 (M.D. Ala. 2004) (holding the court should designate and appoint an arbitrator in cases where the means for selecting an arbitrator are not specified.); Gulf Guar. Life Ins. Co. v. Conn. General Life Ins. Co., 304 F.3d 476, 489 (5th Cir. 2002) (holding courts may intervene into the arbitral process to select an arbitrator upon application of a party, if the parties

fail to avail themselves of a method for arbitrator selection within their agreement.). The parties failed to avail themselves of a method for selecting an arbitrator; therefore, it is the Court's duty to select an arbitrator.

### Prayer for Relief

Wherefore, Plaintiffs request that this Court enter judgment against Defendants and in favor of Plaintiffs as follows:

a) Designating and appointing an arbitrator who shall act under the said agreement with the same force and effect as if specifically named in the agreement;

b) Appointing a single arbitrator to conduct the arbitration because the agreement does not specify the number of arbitrators that shall perform the arbitration; and

c) Designating the applicable rules and fees associated with the arbitration.


/s/ C. Lance Gould
C. LANCE GOULD
Attorney for Plaintiffs


**OF COUNSEL:**

**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103
(334) 269-2343
(334) 954-7555 (fax)

4

ELECTRONICALLY FILED
7/12/2007 1:33 PM
CV-2007-900049.00
CIRCUIT COURT OF
HENRY COUNTY, ALABAMA
SHIRLENE B. VICKERS, CLERK

# FLEETWOOD ONE YEAR LIMITED WARRANTY

## *THIS WARRANTY DOES NOT COVER:

**WARRANTY COVERAGE**

Subject to the exclusions in this Limited Warranty, your new home, which includes the steel structure beneath the floor, plumbing, heating, electrical systems, appliances, and all components installed by the Fleetwood manufacturing center, is warranted by the manufacturing center that built your home to be free from defects in materials and/or workmanship for one (1) year from the date of the close of the sale on the home.

The one-year Limited Warranty covers your home for normal use as a single family dwelling. If the home is used primarily for business, office or commercial purposes, or as a rental home, the Limited Warranty is for 90 days beginning on the first date of such use after the closer of sale and within the first year.

Warranty work is provided upon the request and for the benefit of homeowners only. This Limited Warranty is nontransferable if you sell the home or if you relocate the home from its original installation location.

This Limited Warranty covers only those defects that become evident within the applicable warranty period and where written notice is provided to the Retailer or the Fleetwood Regional Service Center. For purposes of this Limited Warranty, such written notice cannot be received later than five (5) days after the expiration of the applicable warranty period.

All warranty repairs or replacements provided by Fleetwood under this Limited Warranty are free of charge. Any parts of components that are replaced or repaired under this Limited Warranty are covered only until the applicable warranty expires. Any such replaced or repaired parts or components are the property of Fleetwood. Fleetwood will make the final decision whether to repair or replace parts/components. Fleetwood has the sole authority to determine the manner in which repairs are made and the personnel used to complete the repairs. Fleetwood will attempt to accommodate, but not guarantee, special service times, requests or personnel.

---

A. Defects, damage or problems caused by or related to:

▶ Improper site preparation or installation, leveling or re-leveling of the home or installation of skirting or other accessories provided by your Retailer. (Please refer to Retailer obligations on page 3 of this Guide.)

▶ Problems resulting from settling of the home or shifting soil conditions (such as: glass/mirror cracking or breakage, door adjustments, drywall, tape and texture and ceiling cracks).

▶ Abuse, misuse, negligence or accidental damage, damage due to theft, vandalism, natural disasters, high winds, hail or "Acts of God."

▶ Moving your home from its original site.

▶ Alteration, modification, movement and reinstallation of the home.

▶ The use of a kerosene heater or other type of fuel-burning portable heater in the home.

▶ Normal deterioration due to wear or exposure. (Please see page 17 for maintenance requirements.)

▶ Problems caused by lack of maintenance. (See page 17.)

▶ The following items are considered part of homeowner maintenance and are not covered:
  • Carpet wear in high traffic areas
  • Caulking on the interior and exterior of the home
  • Minor drywall, tape and texture or ceiling cracks

▶ Problems resulting from using the home as a support structure for objects attached to it such as awnings, carports, garages etc.

▶ Problems resulting from condensation.

▶ Faucet aerator blockage.

▶ Adjustment of toilets.

▶ Problems resulting from failure to comply with instructio contained in the Homeowner's Guide and/or the Fleetwoo Installation Manual.

▶ Vibration or movement in the home as a result of the ope appliances, wind or people moving in the home.

*This list is illustrative only, not exhaustive.

FLEETWOOD

EXHIBIT
A
tabbies

## THIS WARRANTY DOES NOT COVER: (CONT.)

B. Mold

- If mold growth results from a condition that is no longer covered by the Fleetwood 1-year warranty, the homeowner will be responsible for all costs of remediation and repair. If, however, mold growth results from a defect that is still under warranty (e.g., a plumbing or roof leak within the covered 1-year warranty period), Fleetwood is responsible for the following:

  1) Repair of the leak or defect that caused the mold growth;

  2) Removal or cleaning of affected building materials;

  3) Repair any other parts of the home damaged by the remediation.

- *Fleetwood will NOT be responsible for any other losses, damages, or claims, caused or alleged to be caused by MICROBIAL MATTER or other alleged contamination, including, but not limited to, property damage, personal injury, loss of income, legal fees or expenses, emotional distress, death, loss of use, loss of value, all other economic loss, adverse health effects, or any other effects. IN EXCHANGE FOR THE FLEETWOOD 1-YEAR WARRANTY YOU ARE HEREBY AGREEING TO LIMIT THE IMPLIED WARRANTIES OF WORKMANLIKE CONSTRUCTION, HABITABILITY, AND FITNESS FOR A PARTICULAR USE TO THE TERMS OF THE ONE YEAR EXPRESS WARRANTY. Any dispute relating to what is covered under Fleetwood's warranty or the manufacturer's responsibility for the consequences of mold, including any property damage or personal injury claim, or any other claim, is subject to the applicable arbitration provisions of the retail purchase contract and the Fleetwood warranty.*

C. Damage to your home is not covered unless it is caused by the failure of an item covered by this warranty. The following items are not considered manufacturing defects in materials and/or workmanship and are not covered by this warranty:

  a. Broken, chipped or scratched glass or mirrors, or electrical cover plates.

  b. Scratches, dents, gouges or scuffs in vinyl floor coverings, walls, doors, cabinets, moldings, countertops, appliances, or plumbing fixtures, including toilet seats.

  c. Stains, cuts and/or tears in and on carpets, floor coverings, window treatments.

  d. Damaged or stained hardware (towel bar, door pulls, knobs, etc.), shower doors, exterior siding, trim or shutters.

  e. Torn or damaged window screens or shower curtains.

  f. Cracking or shrinking of fixture, tile or trim caulking.

  g. Broken, loose or missing trim.

  h. Adjustments to window or doors.

Should any of the above items be present at the time of first occupancy; however, they will be repaired or replaced provided you give timely notice of the problem. Items present at first occupancy must be reported to your Retailer or Fleetwood Service Center within *45 days of the close of sale.* A checklist on page 41 has been provided for your use.

D. Bedding, draperies, furniture, tires, wheels, axles or brakes.

E. Any home registered or located outside the 50 United States.

F. Fleetwood will not pay or reimburse you, your insurance company, or third parties who may provide repair, or replacement services without prior written authorization from Fleetwood.

G. YOUR LOSS OF TIME OR INCONVENIENCE, COMMERCIAL LOSS, BEING DISPLACED OR UNABLE TO USE YOUR HOME, INCIDENTAL CHARGES SUCH AS TELEPHONE CALLS, HOTEL BILLS OR OTHER INCIDENTAL OR CONSEQUENTIAL DAMAGES. SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION OR EXCLUSION MAY NOT APPLY TO YOU.

## ARBITRATION

The homeowner(s) and the Fleetwood manufacturing center that manufactured the home, as well as its corporate affiliates, acknowledge and agree that any and all disputes among them shall be resolved pursuant to the arbitration process set forth in this warranty, and such disputes shall be considered on a single case-by-case basis, without any disputes, claims or actions being resolved on a consolidated or class basis. Because the parties have agreed to arbitrate all claims, a party to this arbitration provision may not serve as a class representative or participate as a class member in a putative class-action against any party entitled to compel arbitration under this arbitration provision.

# ABOUT YOUR HOME...

## GENERAL INFORMATION

Your Fleetwood manufactured home is similar in most aspects to a site-built home. The wiring, plumbing and appliance fixtures meet applicable national building standards and codes.

This section of the Homeowner's Guide offers you general information about your home's systems, some safety and security measures to take, and some helpful lifestyle tips that will help to prolong the life of your home.

It's worth your while to read the rest of your Homeowner's Guide. If you're a first-time Homeowner, you'll find this information especially useful. If you've owned a home before, we recommend reviewing the sections that follow, because every home is somewhat unique.

As an added service, we offer a floor plan layout of your home at minimal cost. These are non-proprietary system drawings. For more information on obtaining the diagrams for your home, write to:

Fleetwood Homes
3125 Myers Street
P.O. Box 7638
Riverside, CA 92513-7638
ATTN: Customer Satisfaction Dept.
RE: Floor Plan Layout—HG

Be sure to include your home's model and serial numbers.

## ELECTRICAL SYSTEM

▶ Light fixtures, outlets and wiring in your home meet applicable standards for manufactured home electrical service. Your electrical system is grounded and protected by circuit breakers located in the electrical service panel box.

▶ Branch circuits in the panel are usually grouped for convenience and they are labeled for easy identification.

▶ Two or more 20-ampere, 120-volt circuits are provided for the kitchen and dining areas. Other outlets throughout the home are on 15-ampere circuits.

▶ Bathroom, some kitchen and any manufacturer-installed outdoor outlets are protected by Ground Fault Circuit Interrupter (GFCI) outlets. One exception is the receptacle outlet located on the underside of the house within 2 feet of the water supply inlet. This receptacle is for an electric heat tape. Please refer to page 15 of this Guide for details.

▶ Do not connect any equipment or tools to the receptacle on the underside of the home.

## ARBITRATION (CONT.)

If any provision of this arbitration agreement or warranty is found to be unenforceable such provision shall be considered separate from the remaining provisions of this warranty and such remaining provisions shall remain in full force and effect.

If either party to this arbitration initiates any claim or action against the other party in any forum or through any process other than arbitration, such other party may move to compel the matter to arbitration, and may recover all costs and fees associated with such motion to compel arbitration, and any appeal thereof, if arbitration is compelled.

THE REMEDIES PROVIDED IN THIS WARRANTY ARE THE SOLE REMEDIES PROVIDED BY FLEETWOOD.

ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE APPLICABLE TO THE ITEMS OR COMPONENTS COVERED BY THE EXPRESS WARRANTY IS LIMITED IN DURATION TO THE PERIOD OF THE EXPRESS WARRANTY. SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU.

THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU MAY ALSO HAVE OTHER RIGHTS WHICH MAY VARY FROM STATE TO STATE. ADDITIONALLY, THIS WARRANTY CONTAINS SPECIFIC EXCLUSIONS, THE VALIDITY OF WHICH MAY VARY FROM STATE TO STATE.

FLEETWOOD IS NOT RESPONSIBLE FOR ANY UNDERTAKING, REPRESENTATION OR WARRANTY MADE BY A RETAILER OR OTHER PERSON BEYOND THOSE EXPRESSLY SET FORTH IN THIS WARRANTY.

*FLEETWOOD*

8

☑010/036

ELECTRONICALLY FILED
7/12/2007 1:33 PM
CV-2007-900049.00
CIRCUIT COURT OF
HENRY COUNTY, ALABAMA
SHIRLENE B. VICKERS, CLERK

## AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| ROBERT KENNEDY, II AND | * | |
| STEPHANIE KENNEDY | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Case No.: 30 459 00694 06 |
| | * | |
| | * | |
| FLEETWOOD ENTERPRISES, INC.; and | * | |
| FLEETWOOD HOMES OF GEORGIA, INC.; | * | |
| | * | |
| Defendants. | * | |

## FIRST AMENDED
## COMPLAINT

### PARTIES

1. Plaintiffs Robert and Stephanie Kennedy are over the age of nineteen (19) and are residents of Henry County, Alabama.

2. Defendant Fleetwood Enterprises, Inc. ("Fleetwood Enterprises") upon information and belief is a California corporation, who does business by agent in Henry County, Alabama.

3. Defendant Fleetwood Homes of Georgia, Inc. ("Fleetwood Homes") upon information and belief is a Georgia corporation, who does business by agent in Henry County, Alabama.

### BACKGROUND FACTS

4. On or about March 30, 2000, the Director, Manufactured Housing and Standards Division, Office of Consumer and Regulatory Affairs, Room 9156, Department of Housing and Urban Development (hereinafter the "Department") published a proposed waiver to 24 CFR 3280.504 of the Manufactured Home Construction and Safety Standards on March 30, 2000 (65FR 17110).

**EXHIBIT B**

5. The proposed waiver was issued in response to information received from manufacturers and certain State Administrative Agencies (SAAs) in southeastern States concerning an increase in the number and severity of consumer complaints caused primarily by moisture build-up and condensation in homes located in the south. At that time, § 3280.504 of the Standards did not distinguish among climates for requirements for condensation control and installation of vapor barriers.[1] Thus, for example, the Standards did not separately address homes placed in humid and fringe environments or climates, which are predominantly located in the southeastern part of the United States. In these climates, it was determined that it may be beneficial to prevent the outside, moisture-laden air from entering through the warm (exterior) side of the home's exterior wall and condensing and collecting on the cold (living space or interior) side of the wall assembly. One means of preventing moisture from entering the exterior wall cavity from the outside, would be to install a vapor retarder on the warm or exterior side of the wall instead of on the interior or living space side of the exterior wall.

6. The interior surface of the exterior wall should also then need to be constructed of a permeable material. This would permit any moisture-laden air that may have entered the wall cavity through a discontinuity in the exterior vapor retarder to be dissipated through the interior permeable material. In such cases, use of vapor retarder paints, vinyl-covered gypsum wallboard, or other impermeable materials or finishes on the interior side of exterior walls could be detrimental, because they would trap moisture within the wall.

7. HUD in fact issued a waiver that applied to the first of the alternatives available under § 3280.504(b), the then current condensation control and vapor barrier installation requirements for exterior walls in humid and fringe climates. Specifically, this waiver allowed manufacturers

---

[1] The term "vapor barrier" is now commonly referred to as a "vapor retarder". Accordingly, the term "vapor retarder" will be used in all subsequent references throughout the text of this waiver.

2

of homes for humid and fringe climates to install the vapor retarder on the exterior side, rather than the interior or living space side, of the exterior wall, provided: (1) The exterior side of the exterior wall is constructed with a vapor retarder or exterior covering and sheathing that has a permeance not greater than 1.0 perm; and (2) the interior finish and interior wall panels are designed with a 5 perm or higher rating. The waiver also required manufacturers to add a statement and a map to the data plate indicating that the home is only suitable for installation in humid and fringe climates (the map designated the acceptable locations for which the waiver is applicable).

8. The waiver that was urged by many manufacturers in the industry and approved by HUD stated: **§ 3280.504 Condensation control and installation of vapor retarders:** (4) Homes manufactured to be sited in "humid climates" or "fringe climates" as shown on the Humid and Fringe Climate Map in this paragraph shall be permitted to have a vapor retarder specified in paragraph (b)(1) of this section installed on the exterior side of the wall insulation or be constructed with an external covering and sheathing with a combined permeance of not greater than 1.0 perm, provided the interior finish and interior wall panel materials have a combined permeance of not less than 5.0 perm.

9. The Humid and Fringe Climate Map stated that "following areas of local governments (counties or similar areas, unless otherwise specified), listed by State are deemed to be within the humid and fringe climate areas shown on the Humid and Fringe Climate Map in paragraph (b)(4) of this section, and the vapor retarder specified in paragraph (b)(4) of this section may be applied to homes built to be sited within these jurisdictions":

**Alabama** - Baldwin, Barbour, Bullock, Bulter, Chootaw, Clarke, Cofee,    Conecuh, Covington, Crenshaw, Dale, Escambia, Geneva, Henry, Houston, Lowndes, Marengo, Mobile, Monroe, Montgomery, Pike, Washington, Wilcox.
**Florida** - All counties and locations within the State of Florida.

3

**Georgia** - Appling, Atkinson, Bacon, Baker, Ben Hill, Berrien, Brantley, Brooks, Bryan, Calhoun, Camden, Charlton, Chatham, Clay, Clinch, Coffee, Colquitt, Cook, Crisp, Decatur, Dougherty, Early, Echols, Effingham, Evans, Glynn, Wayne, Grady, Irwin, Jeff Davis, Lanier, Lee, Liberty, Long, Lowndes, McIntosh, Miller, Mitchell, Pierce, Quitman, Randolph, Seminole, Tattnall, Terrell, Thomas, Tift, Turner, Ware, Worth.

**Louisiana**
All counties and locations within the State of Louisiana.

**Mississippi**
Adams, Amite, Clairbourne, Clarke, Copiah, Covington, Forrest, Franklin, George, Greene, Hancock, Harrison, Hinds, Issaquena, Jackson, Jasper, Jefferson, Jefferson Davis, Jones, Lamar, Lawrence, Lincoln, Pearl River, Perry, Pike, Rankin, Simpson, Smith, Stone, Walthall, Warren, Wayne, Wilkinson.

**North Carolina**
Brunswick, Carteret, Columbus, New Hanover, Onslow, Pender.

**South Carolina**
Jasper, Beaufort, Colleton, Dorchester, Charleston, Berkeley, Georgetown, Horry.

**Texas** Anderson, Angelina, Aransas, Atacosa, Austin, Bastrop, Bee, Bexar, Brazoria, Brazos, Brooks, Burleson, Caldwell, Calhoun, Cameron, Camp, Cass, Chambers, Cherokee, Colorado, Comal, De Witt, Dimmit, Duval, Falls, Fayette, Fort Bend, Franklin, Freestone, Frio, Gavelston, Goliad, Gonzales, Gregg, Grimes, Guadalupe, Hardin, Harris, Harrison, Hays, Henderson, Hidalgo, Hopkins, Houston, Jackson, Jasper, Jefferson, Jim Hogg, Jim Wells, Karnes, Kaufman, Kennedy, Kinney, Kleberg, La Salle, Lavaca, Lee, Leon, Liberty, Limestone, Live Oak, Madison, Marion, Matagorda, Maverick, McMullen, Medina, Milam, Montgomery, Morris, Nacogdoches, Navarro, Newton, Nueces, Orange, Panola, Polk, Rains, Refugion, Robertson, Rusk, Sabine, San Augustine, San Jacinto, San Patricio, Shelby, Smith, Starr, Titus, Travis, Trinity, Tyler, Upshur, Uvalde, Val Verde, Van Zandt, Victoria, Walker, Waller, Washington, Webb, Wharton, Willacy, Williamson, Wilson, Wood, Zapata, Zavala.

These respective Counties shall hereinafter be referred to as the "Gulf Coast Region."

10. As the acting Director of Product Engineering for Fleetwood Homes stated in commenting to HUD on the proposed waiver:

> [t]o be able to put the vapor barrier on the exterior side (warm side) of the wall in hot, humid climates is very necessary to properly handle potential moisture problems... [w]ithout these exceptions the vapor barrier will remain on the inside in the hot, humid climate and moisture will be trapped in the home."

(Comments by William Farish, P.E. in a letter dated January 17, 2005, to the Department of Housing and Urban Development).

11. The manufactured homes designed and manufactured by Defendants, including the manufactured home purchased by Plaintiffs, have an improper design and construction of

4

exterior walls in violation of HUD Manufactured Home Construction and Safety Standards as stated above. The defect existed at the time of sale and Plaintiffs were provided with a written manufacturer warranty that expressly warranted that the home was free from defect.

12. Defendants have known of the defect in the design and manufacturer of homes sold in the respective State and Counties indicated above since at least the mid 1990's and actually lobbied HUD to allow a waiver of the HUD Code because of it in the late 1990's. Despite lobbying for the waiver and actually obtaining it in 2001, Defendants failed to take advantage of the waiver HUD agreed was required. Defendants disingenuously allege that it is impracticable to comply with the waiver. Regardless, Defendants chose to sell homes to consumers in the "Gulf Coast" region without informing them of this known defect and thus chose profit over conscience.

13. Because of the design defect, moisture condensation will become trapped within the walls and result in "sweating walls" - a condition wherein water will begin to seep out of openings that may exist in the wall like the screw holes for a smoke detector or nail holes for a picture hanger. The defect results in "soft walls" throughout the home because the moisture problems associated with this design defect literally make it possible to poke a finger through the gypsum wallboard a/k/a sheetrock in the home. Black mold and various other types of fungal growth will appear as a result of this defect. The home is rendered worthless. Because this phenomenon occurs in the Gulf Coast Region, this condition is known to some within the industry as "Gulf Coast Syndrome."

14. Any and all complaints to Defendants have resulted in inadequate relief and despite a reasonable opportunity and repeated complaints by countless individuals, Defendants merely at most offer to replace the gypsum wallboard on occasion. This does not remedy the cause of the

problem as the new gypsum wallboard will deteriorate in the same manner as the replaced gypsum wallboard did. Defendants never inform the consumer of the known defect and fail to offer a full refund of the purchase price.

15. Defendant Fleetwood Enterprises is the parent corporation and/or alter ego of Defendant Fleetwood Homes. Defendant Fleetwood Homes manufactured a manufactured home, which the Plaintiffs purchased on or about September 24, 2004. The purchase price of the home was approximately $50,000.00.

16. As part of the purchase price Defendants made a written express warranty to the Plaintiffs. Defendants further warranted that any defects in the materials or workmanship in the home, which they were given notice of within the warranty period, would be repaired or remedied at no cost to the Plaintiffs.

17. The manufactured home manufactured by Defendant Fleetwood Homes failed to perform, failed to serve as a suitable place or residence, and failed in its intended purpose.

18. Subsequent to the failure of the manufactured home and notice by the Plaintiffs to Defendants of such failure, Defendants have failed to effectuate any repair to the manufactured home. As such, the manufactured home continues to deteriorate structurally.

19. Defendants have failed to honor the warranty or repair in that the manufactured home purchased was not fit for its intended use, was not merchantable at the date of the purchase and has continued to not be fit for its particular purpose, not withstanding efforts to repair the structure by Defendants.

20. Pursuant to Code of Alabama, 1975 § 7-2-607(3), Plaintiffs have given the Defendants notice of Plaintiffs' breach of warranty claim prior to bringing this suit.

21. Defendants had a duty to disclose the known defect to Plaintiffs and they failed to do so, to Plaintiffs' detriment. Based on Defendants' failure to disclose these material facts, Plaintiffs agreed to purchase the manufactured home.

22. Plaintiffs discovered the fraudulent concealment within two (2) years of filing this lawsuit.

23. Defendants entered into a pattern or practice of fraudulent conduct that included the fraud practiced on Plaintiffs.

24. At all times material hereto, Plaintiffs depended on Defendants to advise Plaintiffs as to quality and design of the manufactured home. Defendants had superior knowledge and bargaining power over Plaintiffs.

25. The conduct by Defendants was intentional, gross, wanton, malicious and/or oppressive.

## COUNT ONE
### MAGNUSON MOSS WARRANTY ACT
### 15 U.S.C. § 2301, et seq.

26. Plaintiffs incorporate by reference all of the preceding paragraphs.

27. At the time of the manufacture, Defendants were merchants, Defendants expressly and/or impliedly warranted that the manufactured home would be merchantable and/or fit for the ordinary purposes for which it was to be used and did expressly warrant that the manufactured home was expressly fit, designed, and built as directed by Plaintiffs, and that the manufactured home was free from defects in materials and workmanship or any defects would be repaired or replaced under the warranty.

28. The manufactured home, as delivered, was not free from defects in materials or workmanship.

7

29. Defendants have failed or refused to correct the defects in the manufactured home and/or the warranty has failed in its essential purpose causing Plaintiffs to suffer injury and damages.

30. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been proximately damaged as follows: the defects in the manufactured home have substantially and severely impaired its use; the home is of decreased or lesser value than represented when purchased; Plaintiffs have suffered mental anguish and emotional distress, anxiety, embarrassment, anger, fear, frustration, disappointment, worry, annoyance, inconvenience; and Plaintiffs have been subject to toxic mold resulting from the defects.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory damages as deemed appropriate, and their costs, as well as reasonable attorney fees as allowed under 15 U.S.C. § 2301, et seq.

## COUNT TWO
## BREACH OF EXPRESS WARRANTY

31. Plaintiffs incorporate by reference all of the preceding paragraphs.

32. Defendants expressly warranted that the manufactured home would be merchantable and/or fit for the ordinary purposes for which it was to be used and did expressly warrant that the manufactured home was expressly fit, designed, and built as directed by Plaintiffs, and that the manufactured home was free from defects in materials and workmanship or any defects would be repaired or replaced under the warranty.

33. The manufactured home, as delivered, was not free from defects in materials or workmanship.

8

34. Defendants have failed or refused to correct the defects in the manufactured home and/or the warranty has failed in its essential purpose causing Plaintiffs to suffer injury and damages.

35. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have been proximately damaged as set forth in Paragraph 30.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory damages as deemed appropriate, and their costs, as well as reasonable attorney fees.

## COUNT THREE
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

36. Plaintiffs incorporate by reference all of the preceding paragraphs.

37. Defendants breached the implied warranty in that the manufactured home was not merchantable, was not fit for ordinary purposes, and was not built as represented or ordered.

38. Plaintiffs provided notice to Defendants for the breach of implied warranty and have given Defendants opportunity to cure or attempt to cure the numerous defects, but Defendants have failed or refused to do so.

39. As a direct result of the breach of implied warranty or merchantability by Defendants, Plaintiffs were damaged as set forth in Paragraph 30.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory damages as deemed appropriate, and their costs, as well as reasonable attorney fees.

## COUNT FOUR
## BREACH OF FITNESS FOR PARTICULAR PURPOSE

40. Plaintiffs incorporate by reference all of the preceding paragraphs.

9

41. Defendants breached the implied warranty in that the manufactured home was not merchantable, was not fit for ordinary purposes, and was not built as represented or ordered.

42. Plaintiffs provided notice to Defendants for the breach of fitness for particular purpose and have given Defendants opportunity to cure or attempt to cure the numerous defects, but Defendants have failed or refused to do so.

43. As a direct result of the breach of fitness for particular purpose by Defendants, Plaintiffs were damaged as set forth in Paragraph 30.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory damages as deemed appropriate, and their costs, as well as reasonable attorney fees.

## COUNT FIVE
## BREACH OF WARRANTY OF HABITABILITY

44. Plaintiffs incorporate by reference all of the preceding paragraphs.

45. Defendants breached the implied warranty in that the manufactured home was not merchantable, was not fit for ordinary purposes, and was not built as represented or ordered.

46. Plaintiffs provided notice to Defendants for the breach of warranty of habitability and have given Defendants opportunity to cure or attempt to cure the numerous defects, but Defendants have failed or refused to do so.

47. As a direct result of the breach of warranty of habitability by Defendants, Plaintiffs were damaged as set forth in Paragraph 30.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory damages as deemed appropriate, and their costs, as well as reasonable attorney fees.

10

## COUNT SIX
## NEGLIGENCE

48. Plaintiffs incorporate by reference all of the preceding paragraphs.

49. Defendants negligently manufactured, designed, built, and/or assembled the manufactured home which the Plaintiffs purchased from Defendants.

50. Defendants owed a duty to use due and ordinary care in the manufacture, design, building, and/or assembly of the manufactured home purchased by the Plaintiffs.

51. Defendants breached the duty owed to the Plaintiffs by failing to use ordinary and due care in the manufacture, design, building, and/or assembly of the manufactured home which was purchased by the Plaintiffs.

52. As a direct and proximate result of the Defendants' negligence, Plaintiffs were damaged as set forth in Paragraph 30.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory damages as deemed appropriate, and their costs, as well as reasonable attorney fees.

## COUNT SEVEN
## WANTON

53. Plaintiffs incorporate by reference all of the preceding paragraphs.

54. Plaintiffs allege Defendants are guilty of wanton construction of the manufactured home.

55. The workmanship and design are inferior, wantonly performed or done, leaving the manufactured home in a defective condition, thereby causing injury to the Plaintiffs.

56. As a direct and proximate result of the Defendants' wantonness, Plaintiffs were damaged as set forth in Paragraph 30.

11

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory damages as deemed appropriate, a separate amount as punitive damages, and their costs, as well as reasonable attorney fees.

## COUNT EIGHT
## UNJUST ENRICHMENT

57. Plaintiffs incorporate by reference all of the proceeding paragraphs.

58. Defendants, by its acts and omissions described herein, have wrongfully appropriated, retained or otherwise possessed funds that rightfully in justice and equity belong to Plaintiffs. Defendants have earned enormous profits from this deceptive act.

59. Defendants should be required to disgorge all sums (e.g. the money earned from this practice) received from Plaintiffs as a result of the illegal and improper manner in which they placed for use by consumers a product (the Plaintiffs' home) into a region in which they knew the home would become worthless. Plaintiffs are also entitled to pre-judgment interest.

## COUNT NINE
## FRAUDULENT CONCEALMENT

60. Plaintiffs incorporate by reference all of the preceding paragraphs.

61. Defendants failed to disclose the known defect (as set forth in the Background Facts) of the manufactured home to Plaintiffs in connection with the purchasing of the manufactured home.

62. The fraudulent concealment and omissions by Defendants were known and deliberate and were purposely designed to deceive Plaintiffs.

63. The concealment and omissions by Defendants were material in that Plaintiffs would not have purchased the manufactured home absent the concealment and omissions of material

12

facts by Defendants. Plaintiffs reasonably believed that Defendants had accurately and adequately disclosed all material facts.

64.    As a direct and proximate result of Defendants' fraudulent concealment and omissions, Plaintiffs were damaged as set forth in Paragraph 30.

65.    Defendants' fraudulent conduct was willful, wanton, and malicious, thereby entitling Plaintiffs to the recover an amount to be determined at the trial of this action.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory damages as deemed appropriate, a separate amount as punitive damages, and cost, as well as reasonable attorney fees.

## COUNT TEN
## NEGLIGENT/WANTON FRAUDULENT CONCEALMENT

66.    Plaintiffs incorporate by reference all of the proceeding paragraphs.

67.    Defendants negligently and/or wantonly fraudulently failed to disclose material facts to Plaintiffs.

68.    Said action was a breach of the duty owed to Plaintiffs.

69.    As a proximate consequence of said actions, Plaintiffs were damaged as set forth in Paragraph 30.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory damages as deemed appropriate, a separate amount as punitive damages, and cost, as well as reasonable attorney fees.

## COUNT ELEVEN
## ALABAMA EXTENDED MANUFACTURERS LIABILITY DOCTRINE

70. Plaintiffs incorporate by reference all of the preceding paragraphs.

71. Defendants were involved in the manufacture of a Fleetwood Festival manufactured home, specifically, serial number GAFL434AB77306-FE11.

72. Defendants manufactured the manufactured home and placed it in the stream of commerce where Plaintiffs ultimately purchased the manufactured home on or about September 24, 2004.

73. The manufactured home reached the Plaintiffs as the ultimate users or consumers without any substantial change in its condition from the time it was manufactured by Defendants.

74. Plaintiffs used the manufactured home for its intended purpose, as a residence.

75. The manufactured home, when it reached the Plaintiffs, was in a defective condition and/or in a condition that was unreasonably dangerous to the Plaintiffs as the ultimate users or consumers.

76. As a direct and proximate result of Defendants placing a defective and/or unreasonably dangerous manufactured home in the stream of commerce, Plaintiffs were damaged as set forth in Paragraph 30.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such an amount of compensatory damages as deemed appropriate, a separate amount as punitive damages, and their costs, as well as reasonable attorney fees.

Dated: <u>September 21, 2006.</u>

C. LANCE GOULD
C. GIBSON VANCE
Attorneys for Plaintiffs

14

OF COUNSEL:

**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103
(334) 269-2343
(334) 954-7555 (fax)

15

02/05/2007 MON 17:30  FAX 251+776+5750 CROSBY SAAD LLC

ELECTRONICALLY FILED
7/12/2007 1:33 PM
CV-2007-900049.00
CIRCUIT COURT OF
HENRY COUNTY, ALABAMA
SHIRLENE B. VICKERS, CLERK

LAW OFFICES OF

**CROSBY SAAD LLC**

6404 HILLCREST PARK COURT

MOBILE, ALABAMA 36695

E.J. SAAD
JAMES H. CROSBY
CIVIL LAW NOTARIES

HENDRIK S. SNOW

P.O. DRAWER 850249
MOBILE, ALABAMA 36685

E-MAIL:

TELEPHONE (251) 476-3000
TELECOPIER (251) 776-5750
www.crosbysaad.com

February 5, 2007

**VIA FACSIMILE (404-325-8034)
& U.S. MAIL**
Joyce Miñano
Case Manager
American Arbitration Association
2200 Century Parkway
Suite 300
Atlanta, Georgia  30345

Re:  *Robert & Stephanie Kennedy v. Fleetwood Enterprises, Inc. and
Fleetwood Homes of Georgia, Inc.*
(# 30 434 00694 06)
Jurisdictional objection

Dear Ms. Miñano:

Fleetwood Enterprises, Inc. ("Fleetwood") and Fleetwood Homes of Georgia, Inc. ("Fleetwood of Georgia"), collectively, "the Respondents," hereby object to the AAA's jurisdiction over this dispute on the grounds that the parties never agreed their arbitration would be handled through the AAA.

While preparing objections to the arbitrator appointed in this case, the undersigned counsel looked at the arbitration provision submitted with the plaintiffs' demand for arbitration. As you are aware, Lance Gould has filed this and five other similar arbitrations with the AAA. The Respondents have continued to object to the AAA's application of the Supplementary Procedures for Consumer Related Disputes ("the Consumer Rules") to these and the other five arbitrations. As I started drafting an objection based on the appointment of the arbitrator under the Consumer Rules, as opposed to the Commercial Arbitration Rules, which the Respondents contend should govern these proceedings, I looked at the arbitration provision submitted by Mr. Gould to see what that specific language says about which rules should be applied.

I noted that Mr. Gould provided an arbitration provision, attached as Exhibit A to this letter, that purports to invoke the jurisdiction of the AAA. That arbitration provision, however, is not the correct arbitration provision.



EXHIBIT

C

The warranty booklet which contains the arbitration provision is revised from time to time. As a revision is issued, a copy of the revised warranty booklet is placed inside each manufactured home that is completed after that revision date.

The plaintiffs' home was completed on July 29, 2004. The warranty booklet was revised in May 2004. Accordingly, the arbitration provision from the May 2004 version of the warranty booklet should apply in this case. That arbitration provision, a copy of which is attached as Exhibit B, does not invoke the jurisdiction of the AAA. The arbitration provision submitted by Mr. Gould is located in the prior version of the warranty booklet, and has no application here.

The Commercial Arbitration Rules provide that the parties may invoke the jurisdiction of the AAA by providing for arbitration with the AAA in their contract, or by later sending the AAA a written submission signed by both parties. *See* Rules R-1, R-4 and R-5. The parties here never contracted for arbitration by the AAA, and the Respondents never submitted in writing a desire that the AAA govern these proceedings.

Accordingly, the AAA has no jurisdiction over this matter. The Respondents request that the AAA dismiss this claim in its entirety.

Please note that the Respondents are submitting, contemporaneously with this letter, a letter stating their objections to the appointment of Michael Roberts as arbitrator in these proceedings. The Respondents request that the AAA consider those objections only in the event that the AAA denies the request in this letter to dismiss the case entirely. Respondents do not intend in any way to waive their right to seek dismissal of these proceedings as stated in this letter by submitting objections to the appointed arbitrator.

Respectfully submitted,

DAVID F. WALKER

cc:    Lance Gould

2

**EXHIBIT B**



**AlaFile E-Notice**

37-CV-2007-900049.00

Judge: DENNY L HOLLOWAY

To:  GOULD CHARLES LANCE
     lance.gould@beasleyallen.com

---

# NOTICE OF SERVICE

---

### IN THE CIRCUIT COURT OF HENRY COUNTY, ALABAMA

### ROBERT KENNEDY II ET AL V. FLEETWOOD ENTERPRISES, INC. ET AL
### 37-CV-2007-900049.00

The following matter was served on 7/18/2007

### D001 FLEETWOOD ENTERPRISES, INC.
### CERTIFIED MAIL

**SHIRLENE B. VICKERS**
**CIRCUIT COURT CLERK**
HENRY COUNTY, ALABAMA
101 W. COURT SQUARE
ABBEVILLE, AL 36310

334-585-2753
shirlene.vickers@alacourt.gov

**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROBERT KENNEDY, II and
STEPHANIE KENNEDY,                          *

     Plaintiffs,                          *

vs.                                          *    CASE NO.: CV-2007-_____

FLEETWOOD ENTERPRISES, INC.,                 *
FLEETWOOD HOMES OF GEORGIA,
INC.,                                        *

     Defendants.                          *

## AFFIDAVIT OF TODD UHLICK

**STATE OF CALIFORNIA )**

**COUNTY OF RIVERSIDE )**

BEFORE ME, the undersigned authority, personally appeared Todd J. Uhlick, being by me first duly sworn, doth depose and say as follows:

"My name is Todd J. Uhlick.  I am now, and, at all times relevant to this lawsuit have been, employed by Fleetwood Enterprises, Inc. (FEI) as its Assistant General Counsel. Fleetwood Enterprises, Inc. is a Delaware corporation, with its principal place of business in Riverside, California.  Fleetwood Enterprises, Inc. is the parent company of Fleetwood Homes of Georgia, Inc.  Fleetwood Homes of Georgia, Inc. (FHGI) is a Georgia corporation with its principal place of business in Georgia. "

"According to records I have reviewed, FHGI was served with process in this action by

certified mail on July 18, 2007, and FEI was served with process in this action by certified mail on July 19, 2007."

Further affiant says not.

*Todd J. Uhlick*
Todd J. Uhlick
Assistant General Counsel
Fleetwood Enterprises, Inc.

STATE OF CALIFORNIA     )

COUNTY OF RIVERSIDE     )

Before me, the undersigned a Notary Public in and for State and County aforesaid, personally appeared Todd J. Uhlick, who is personally known to me and who, being by me first duly sworn doth depose and say that he signed the above affidavit and that it is true and correct to the best of his knowledge.

Done this the 2nd day of August, 2007.

*Virginia R. Smith*
NOTARY PUBLIC

(SEAL)

> VIRGINIA R. SMITH
> COMM. #1706240
> NOTARY PUBLIC - CALIFORNIA
> RIVERSIDE COUNTY
> My Comm. Expires Dec. 16, 2010

My Commission Expires: 12-16-10

2

**EXHIBIT D**

## AMERICAN ARBITRATION ASSOCIATION
## COMMERCIAL ARBITRATION RULES

**1.    How is this claim being filed?**

This claim is being filed by request of the Consumers. A copy of the arbitration agreement believed to be used by the Businesses in this transaction is attached and I have also provided a copy to the Businesses.

**2.    Briefly explain the dispute.**

See attached First Amended Complaint.

**3.    Do you believe there is any money owed to you?**

The Kennedys' out of pocket damages, exclusive of punitive damages and mental anguish damages, is $50,000.00, plus interest. At this time, the Kennedys are unable to quantify what amount is necessary to compensate them for the mental anguish and emotional stress caused by the Businesses' actions. Also, the Kennedys seek an undetermined amount for punitive damages in order to deter similar conduct.

**4.    Is there any other outcome you want?  Yes.**
**If yes, what is it?** Rescind the contract.

**5.    Preferred hearing locale:      Montgomery, Alabama**

**Consumers**

Name of Consumer: <u>Robert & Stephanie</u>
                          <u>Kennedy</u>

Address:         <u>1478 County Road 18</u>                 Representative: <u>C. Lance Gould</u>

City/State/Zip:   <u>Newville, Alabama 36353</u>            Firm: _____<u>Beasley, Allen, Crow, Methvin</u>
                                                                      <u>Portis & Miles, P.C.</u>

                                                          Address: _____<u>272 Commerce Street</u>

                                                          City/State/Zip: <u>Montgomery, AL 36104</u>

                                                          Telephone: ___<u>(334) 269-2343</u>

                                                          Fax: _____<u>(334) 954-7555</u>

                                                          Signature of Representative

**Business**

Name of Business: __Fleetwood Enterprises, Inc.__
__and Fleetwood Homes of__
__Georgia, Inc.__

Representative: __Winston Edwards__

Firm: __Bush Craddock &__
__Reneker, LLP__

Address: __4142 Carmichael Road,__
__Suite C__

City/State/Zip: __Montgomery,Alabama 36106__

Telephone: __334-215-3064__

Fax: __334-215-7843__


Representative: __James H. Crosby__

Firm: __Crosby Saad, L.L.C.__

Address: __6404 Hillcrest Park Court__

City/State/Zip: __Mobile, Alabama 36695__

Telephone: __251-476-3000__

Fax: __251-776-5750__